**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

**IN RE STARBUCKS EMPLOYEE**
**GRATUITY LITGATION**                           MASTER FILE
                                                 INDEX NO: 08-cv-3318 (LTS)

This Document Relates To:
All actions                                      Class Action


-----------------------------------------------------x


**BARENBOIM PLAINTIFFS' OPPOSITION TO WOLF POPPER'S MOTION FOR APPOINTMENT OF INTERIM CLASS COUNSEL AND CROSS-MOTION TO APPOINT BARENBOIM COUNSEL AS INTERIM CLASS COUNSEL**

**1.     PRELIMINARY STATEMENT**

The issue at hand is which counsel is best suited to represent the current and former Starbucks baristas challenging Starbucks' tip sharing policy under New York law. As explained below, it is unequivocally in the best interests of the putative class to be represented by the Barenboim counsel, who have a track record of vindicating employees' rights and successfully representing thousands of food-service workers with similar or identical claims to those raised in this case.

The Barenboim plaintiffs' counsel regret that the first issue placed before the Court relates to this unseemly dispute of which counsel should be appointed to represent the putative class of baristas. Nevertheless, Wolf Popper, the Harayda plaintiffs' counsel, has failed to engage in good faith discussions with the Barenboim counsel in order to resolve this issue. Instead, Wolf Popper sought early appointment from the Court as interim class counsel.

1

Therefore, it appears to be in the best interests of the putative class to have this issue resolved promptly so that counsel may devote their full attention in this case toward pressing forward with the plaintiffs' claims against Starbucks.

Wolf Popper's claims that its counsel are more qualified to represent the putative class than the Barenboim plaintiffs' counsel are truly puzzling. The Barenboim plaintiffs' counsel are experienced employment and class action litigators with highly developed expertise in the emerging sub-field of "tips litigation." The Barenboim plaintiffs are represented by Attorney Shannon Liss-Riordan with her Boston firm of Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C. and Attorney Maimon Kirschenbaum with his New York firm Joseph & Herzfeld, LLP; both of these attorneys and their firms are well known for their achievements in the area of tip-related litigation. See Declaration of Shannon Liss-Riordan ("Liss-Riordan Dec."); Declaration of Maimon Kirschenbaum ("Kirschenbaum Dec."). Indeed, it has been Attorney Liss-Riordan's pioneering work in this field over the last seven years in Massachusetts that has appeared to have prompted the recent national wave of tips litigation brought by employees who claim not to have received the total proceeds of gratuities to which they believe they are entitled. It was her work that inspired the California lawsuit that recently led to a judgment of more than $100 million for baristas who successfully challenged Starbucks' tip sharing policy under California law, in the case of Chau et al. v. Starbucks Corporation, No. GIC 836925 (Cal. Super. Ct. San Diego County). Attorney Kirschenbaum has likewise devoted the majority of his practice over the last two years to tips-related litigation. He has achieved substantial class action settlements on behalf of waitstaff (including recoveries in nine cases totaling close to $9 million); he has represented

putative and/or certified classes in sixteen tips-related cases in New York federal court. See Kirschenbaum Dec. ¶¶ 5-9. In stark contrast, the Wolf Popper firm has at most minimal experience in employment law and appears to have no experience whatsoever in litigation related to tip-sharing policies.[1]

The Barenboim counsel does not deny that Wolf Popper is an experienced and successful class action firm in the area of securities and consumer litigation. It has achieved impressive verdicts and settlements for its clients in these areas. However, this experience, limited to other practice areas, does not make Wolf Popper best suited to represent the putative class in this case.

While the Barenboim plaintiffs' counsel are fully willing to work cooperatively with other counsel if additional assistance is needed in the prosecution of this case, Wolf Popper has not shown how it would be of such assistance. First, it entirely lacks experience in this particular area of law, and second its attorneys engaged in what unfortunately can only be described as "bullying" behavior in their purported outreach to the Barenboim counsel to work together on this class action.

The Barenboim counsel therefore respectfully request that the Court deny Wolf Popper's Motion and grant their Cross-Motion to be appointed *interim* lead counsel for the putative class.

---

[1] Wolf Popper's website lists the following practice areas, which do not include employment litigation: Securities Litigation, Consumer Fraud, Antitrust, Corporate and Commercial Law, Health Care Litigation, ERISA, and Corporate Transactional/Derivative Litigation. (See www.wolfpopper.com/section.cfm/ID/3.) In its motion detailing its qualifications to represent the putative class, Wolf Popper describes itself as "a leader in efforts to protect the interests of defrauded investors and consumers." Wolf Popper Motion, at 4. It also states generally that "[t]he firm is also knowledgeable as to employee/employer issues," id.

3

## 2. BACKGROUND

On April 3, 2008, Jeanna Barenboim filed a class action, <u>Barenboim et al. v. Starbucks Corporation</u>, C.A. No. 08-CV-3318 (S.D. N.Y.), challenging Starbucks' policies regarding the appropriation of baristas' tips. Ms. Barenboim is represented by Joseph & Herzfeld, LLP ("Joseph & Herzfeld"), and Pyle, Rome, Lichten, Ehrenberg & Liss-Riordan, P.C. ("Pyle Rome").[2] This case builds upon seven years of work by Attorney Shannon Liss-Riordan from Pyle Rome[3] and three years of work by Attorney Maimon Kirschenbaum of Joseph & Herzfeld.[4]

---

without providing examples of employment cases it has litigated.

[2]     Pyle Rome is an employment, labor, and class action firm in Boston with fifteen attorneys that has obtained national recognition for its work on class action employment litigation; Joseph & Herzfeld, which has nine attorneys, similarly specializes in employment law and class actions and has achieved national recognition for its work. (<u>See</u> Liss-Riordan and Kirschenbaum Decs.)

[3]     Attorney Liss-Riordan, who graduated with honors from Harvard Law School and Harvard College, is a recognized national leader in class action litigation, who speaks frequently at conferences sponsored by such organizations as the American Bar Association and National Employment Lawyers Association on the topics of class actions, wage and hour law, and employment law in general. She was selected this year for inclusion in "Best Lawyers in America" and named as one of "Boston's Best Lawyers" in the <u>Boston Globe Magazine</u> (one of the few plaintiff-side employment attorneys selected). She has been selected as a Massachusetts "Super Lawyer" each year since 2005. In 2002, before she had even begun much of her work on tips cases and class action litigation, she was honored with being selected as one of ten "Lawyers of the Year" by <u>Massachusetts Lawyers Weekly</u> for her success in a number of significant discrimination and First Amendment cases. <u>See</u> Liss-Riordan Dec.

[4]     In preparing the case, the <u>Barenboim</u> counsel interviewed a number of current and former Starbucks baristas and shift supervisors to determine the strength of the claims in this lawsuit. Since the <u>Barenboim</u> lawsuit was filed, an amended complaint, with two additional named plaintiffs, was filed. <u>See</u> Kirschenbaum Dec.

4

Attorney Liss-Riordan has represented thousands of waitstaff employees in dozens of cases against restaurants, hotels, country clubs, and other foodservice establishments contending that waitstaff were deprived of the total proceeds of tips, gratuities, or service charges to which they were lawfully entitled. She has taken three tips cases to trial and has won all three before juries: Calcagno et al. v. High Country Investor, Inc., d/b/a Hilltop Steak House, C.A. No. 03-0707, Mass. Sup. Ct. (Essex 2006) (banquet coordinators not entitled to share in gratuities); Benoit et al. v. The Federalist, Inc., C.A. No. 04-3516, Mass. Sup. Ct. (Suffolk 2007) (coordinators not entitled to portion of banquet service charges); and DiFiore et al. v. American Airlines, Inc., C.A. No. 07-10070, U.S. Dist. Ct. (D. Mass. 2008) (airline's policy of collecting $2 per bag charge for curbside check-in that was not distributed to skycaps violated Mass. Tips Law and rendered airline liable for tortious interference with advantageous relations).[5] She has taken one tips case to the Massachusetts Appeals Court, which she also won: Cooney et al. v. Compass Group Foodservice, 69 Mass. App. Ct. 632 (2007) (reversing trial court's denial of summary judgment for plaintiff servers, holding that Massachusetts Tips Law should be strictly construed against establishment that did not distribute proceeds of "service charges" to waitstaff employees). She has prevailed on summary judgment on behalf of plaintiff waitstaff in at least seven tips cases: Fernandez et al. v. Four Seasons Hotels, Ltd. et al., C.A. No. 02-4689, Mass. Sup. Ct. (Suffolk 2007) (assistant banquet managers and catering coordinators not entitled to share in gratuities even if they assist with serving patrons, summary judgment granted in favor of

---

[5] The federal court intends to certify the DiFiore case shortly to the Massachusetts Supreme Judicial Court for a ruling regarding the circumstances in which the Massachusetts Tips Law may apply to non-employers.

plaintiff waitstaff); Shea et al. v. Weston Golf Club, C.A. No. 02-1826, Mass. Sup. Ct. (Middlesex 2007) (total gratuities charged by country club must be distributed to waitstaff and bartenders); Banks et al. v. SBH Corp. d/b/a/ Grill 23 & Bar, C.A. No. 04-3515, Mass. Sup. Ct. (Suffolk 2007) (summary judgment granted in favor of waitstaff on claim that they did not receive entire banquet gratuity); Moore et al. v. Barnsider Management Corp., 2006 WL 2423328 (partial summary judgment entered in favor of waitstaff where kitchen staff received share of tip-outs); Paratore et al. v. F-1 Boston Café, LLC, C.A. No. 02-2162, Mass. Sup. Ct. (Norfolk 2005) (waitstaff entitled to entire proceeds of service charges added to food and beverage bills); Michalak et al. v. Boston Palm Corporation, 2004 WL 2915452 (banquet service charges must be distributed to waitstaff; catering coordinators cannot receive share of gratuities even thought they assist with service); Williamson et al. v. DT Management Co. d/b/a Boston Harbor Hotel, Inc., 2004 WL 1050582 (distribution of portion of banquet gratuity to assistant managers and other non-waitstaff employees who assisted with serving customers violated state tips law). She has been appointed class counsel on behalf of a certified national class of Morton's waitstaff challenging in arbitration the restaurant's violation of the tip credit provision of the FLSA: Johnson et al. v. Morton's Restaurant Group, et al., AAA No. 11 460 01513 05.[6] In addition to these victories, Attorney Liss-Riordan and her firm have obtained court-approved class action settlements in nearly twenty cases brought on behalf of waitstaff employees alleging

---

[6]   Attorney Liss-Riordan has been assisted in a number of these cases by her partner Attorney Hillary Schwab, who co-counseled with her in all three tips trials cited above. Attorney Schwab and Attorney Harold Lichten, also a top employment litigator in Boston, will also be available to assist on the Barenboim case as needed.

tip-related violations.[7]  See Liss-Riordan Dec.

---

[7]  In addition to her cases regarding tip violations, Attorney Liss-Riordan has achieved numerous successes on behalf of employees in other class action and individual litigation. Recently, she and her partner Harold Lichten won a class action bench trial against the Commonwealth of Massachusetts in which they successfully challenged the state's entry level firefighter civil service exam as having a discriminatory disparate impact on minority applicants; that victory led to a court-approved class action settlement for $2.15 million, including the hiring of more than 60 minority firefighters and police officers.  Bradley et al. v. City of Lynn et al, 443 F.Supp.2d 145 (D. Mass. 2006).  Attorney Liss-Riordan has also successfully challenged a class action waiver in an arbitration agreement in the first case in which a federal Court of Appeals has considered the validity of a class action waiver in an FLSA case.  See Skirchak et al. v. Dynamics Research Corporation, 508 F.3d 49 (1st Cir. 2007).  She has won significant victories for individual plaintiffs in discrimination and retaliation cases in federal and state court.  See, e.g., Richard Dahill v. Boston Police Department, 434 Mass. 233 (2001) (Mass. Supreme Judicial Court decided upon certification from the federal district court that Massachusetts discrimination law would be more protective than federal law in prohibiting discrimination against individuals with correctable disabilities, which resulted in a jury verdict of approximately $850,000) (co-counsel with Harold Lichten); John Sprague v. United Airlines, Inc., 2002 WL 1803733 (following a bench trial, federal court ruled that airline violated Americans With Disabilities Act by refusing to hire deaf airline mechanic, entering judgment of approximately $1.1 million) (co-counsel with Harold Lichten); Samantha Smith et al. v. Winter Place LLC d/b/a Locke-Ober Co., Inc., 447 Mass. 363 (2006) (Mass. Supreme Judicial Court ruled that internal complaints of wage violations are protected under anti-retaliation statute); Richard Gasior v. Massachusetts General Hospital, 446 Mass. 645 (2006) (Mass. Supreme Judicial Court determined that discrimination claims, including claims for punitive damages, survive the plaintiff's death); King et al. v. City of Boston, 71 Mass.App.Ct. 460 (2008) (Mass. Appeals Court found that female superior officers could prove discrimination in police department's failure to provide them with private locker rooms, a privilege enjoyed by male superior officers); Gilbert Hernandez v. Winthrop Printing Co., Suffolk Superior Court, No. 99-04588G (lead counsel in jury trial resulting in verdict for plaintiff who was terminated retaliation for complaining of race discrimination); John Bingham v. Lynn Sand & Stone, Mass. Commission Against Discrimination No. 93-BEM-1491 (lead counsel for case in which truck driver proved he was not hired because of his race); Adam Simms v. City of New York, 160 F.Supp.2d 398 (E.D.N.Y. 2001) (disability discrimination case resulting in partial summary judgment for the plaintiff and, on the eve of trial in federal court, the return to full duty of a New York firefighter with diabetes); O'Neill v. Commonwealth, 2002 WL 342675 (D. Mass. 2002) (obtained federal court injunction ordering reinstatement of State Police recruit who had been disqualified in violation of his First Amendment rights, for owning adult bookstores); and Moore v. Commonwealth, C.A. No. 02-10379, U.S. Dist. Ct. (D. Mass. 2002) (obtained federal court injunction ordering reinstatement of State Police recruit who had been disqualified in violation of

Attorney Liss-Riordan's tip-related cases, which began in Massachusetts, have received national attention. In April, the Boston Globe called Attorney Liss-Riordan a "Legal Champion" for tipped employees in a front page profile featuring her work on behalf of waitstaff employees and skycaps. (See Exhibit 1 to Liss-Riordan Dec.) Her work on behalf of tipped employees has also been highlighted in national publications including The National Law Journal and Nation's Restaurant News and online publications including The Legal Broadcast Network and Lawyers and Settlements. (See Exhibit 2 to Liss-Riordan Dec.)[8] In awarding attorneys' fees to her for a retaliation case she brought on behalf of a terminated server against Morton's of Chicago, a prominent arbitrator declared her to be "widely recognized as one of the pre-eminent plaintiff lawyers in New England, and she is the unchallenged leader regarding wage and hour and retaliation claims in the hotel and restaurant industry." Bilbilian and Morton's of Chicago/Boston, Inc., AAA Case No. 11 160 00217 03, Ruling on Petition for Attorneys Fees, (Exhibit 4 to Liss-Riordan Dec.), at 15.[9]

Attorney Liss-Riordan's cases on behalf of waitstaff employees appear to have prompted what has been referred to as a "wave" of tip-related litigation across the country. Several years

---

her First Amendment rights, for cohabitating with a convicted felon).

[8] Her recent work on behalf of skycap employees challenging the airlines' imposition of $2 per bag charges for curbside check-in (for which she and her partner Attorney Schwab recently won a jury verdict in federal court, DiFiore et al. v. American Airlines, Inc., C.A. No. 07-10070, U.S. Dist. Ct. (D. Mass. 2008)) has likewise received national attention, including recent features on CNN and NPR. (See Exhibit 3 to Liss-Riordan Dec.)

[9] For more information on Attorney Liss-Riordan's tip cases, see www.prle.com/ca_tips_law.htm (Exhibit 3 to Liss-Riordan Dec.).

ago, attorneys in California, after hearing Attorney Liss-Riordan speak at a national conference about her work challenging tipping violations and obtaining sample briefing from her on issues related to tip litigation, filed a case against Starbucks on behalf of baristas that resulted earlier this year in a judge's ruling after a bench trial that Starbucks violated the California tips law, California Business and Professions Code sections 17200 *et seq.*, and entered judgment of more than $100 million.  Chau et al. v. Starbucks Corporation, No. GIC 836925 (Cal. Super. Ct. San Diego County).

Following the success of that trial, Attorney Liss-Riordan filed a similar case in Massachusetts where she now represents a putative statewide class of baristas alleging that Starbucks' tip policy violates the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A. Matamoros et al. v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass.).  Shortly afterward, Maimon Kirschenbaum contacted her and invited her to join him in filing a similar case in New York under N.Y. Labor Law § 196-d, which is the Barenboim case.

Attorney Kirschenbaum has for the last several years similarly specialized in tips-related cases.  (Kirschenbaum Dec.).  Attorney Kirschenbaum is one of the most active litigators in New York challenging employers' tip distribution policies and has represented New York foodservice employees in approximately twenty-four multi- plaintiff lawsuits.  Sixteen of the cases have been alleged as class action cases claiming violations of N.Y. Labor Law § 196-d.  Six of these actions have been approved as collective actions under the FLSA, 29 U.S.C. § 216(b), and he and his firm have been approved three times as lead counsel pursuant to Rule 23.  Id.  See, e.g., Williams v. Twenty Ones, Inc., C.A. 07-cv-3978, 2008 WL 2690734 (S.D.N.Y. June 30, 2008)

9

(conditional certification for various wage/hour and tip violations at high-end hip-hop club in Manhattan); Fasanelli v. Heartland Brewery, 516 F. Supp2d 317 (S.D.N.Y. 2007) (awarding collective action certification for wage/hour and tip violations for hundreds of employees working at six different restaurant locations).  Attorney Kirschenbaum has obtained substantial class action settlements on behalf of thousands of servers at New York City restaurants, settling nine class actions on behalf of servers in the last two years for close to $9,000,000.  His work has attracted significant media attention, including several articles in the New York Times, Nation's Restaurant News, and other media outlets.  Attorney Kirschenbaum was dubbed by New York Magazine's food blog as the "patron saint of underpaid waiters."  Attorney Kirschenbaum's work has contributed greatly to a city-wide movement on behalf of food service employees.  See Kirschenbaum Dec. (and representative media articles pertaining to his work attached as Exhibit A).

When the Barenboim case was filed, The New York Times gave it prominent coverage. (See Exhibit B to Kirschenbaum Dec.: Steven Greenhouse, "Starbucks Sued in New York Over Tip Issue", Apr. 4, 2008.)  One week later, the Wolf Popper firm filed a virtually identical case against Starbucks in New York State Supreme Court, which Starbucks removed to this Court, Harayda v. Starbucks Corp., C.A. No. 08-CV-4182 (S.D. N.Y.).  Clearly the publicity engendered by the tips-related litigation described above attracted the Wolf Popper firm—which neither specializes in employment litigation, nor appears to have ever litigated a case related to tip law violations—to file this "copy-cat" case over the Barenboim case.

10

**3.    THE BARENBOIM COUNSEL SHOULD BE APPOINTED INTERIM CLASS COUNSEL AS THEY ARE CLEARLY THE MOST QUALIFIED TO REPRESENT THE PUTATIVE CLASS**

    **A.    The Rule 23(g) Factors Favor the Barenboim Counsel**

In deciding an application to be appointed class counsel, the court must consider the putative class counsel's work in the case, experience in handling class actions of the type in question, knowledge of the applicable law, and resources. Fed. R. Civ. P. 23(g)(1)(A). When "more than one applicant seeks appointment, the court must appoint the applicant best able to represent the interests of the class." Fed. R. Civ. P. 23(g)(2). "Pursuant to Federal Rule of Civil Procedure 23(g)(3), the Court 'may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action.' Although Rule 23(g)(3) itself contains no guidance for selecting interim counsel, the criteria specified in Rule 23(g)(1) for the appointment of class counsel shall be used by the Court in making its determination." In re Cathode Ray Tube (CRT) Antitrust Litigation, 2008 WL 2024957, *1 (N.D. Cal. 2008).

The four factors set forth in Rule 23(g) favor appointment of the Barenboim counsel as lead counsel:

    **(i)    The work counsel has done in identifying or investigating potential claims in the action**

The Barenboim counsel have devoted significant time and effort into investigating the claims in this lawsuit. Specifically, the Barenboim counsel interviewed a number of current and former Starbucks baristas and shift supervisors to determine the strength of the claims in this

11

lawsuit. In addition, the Barenboim counsel have reviewed every published decision, New York Department of Labor opinion letter, and legislative history document relating to New York Labor Law § 196-d.

Further Attorney Liss-Riordan is litigating a parallel case under Massachusetts law, Matamoros et al. v. Starbucks Corporation, C.A. No. 08-10772 (D. Mass.), in which plaintiffs contend that Starbucks' tip-sharing policy violates the Massachusetts Tips Law, Mass. Gen. L. c. 149 § 152A. In that case, she is in communications with the same counsel from Akin Gump who represents Starbucks in this litigation.[10] By representing both putative classes, she would be able to achieve particular efficiency in this litigation by coordinating, and avoiding duplicative efforts, in legal strategy, discovery, and other issues that may arise in both cases.

Other than general conclusory statements, the Harayda counsel have not provided examples of any substantial work they have done in investigating and/or identifying potential claims. Thus, this factor clearly favors the Barenboim counsel.

> **(ii) and (iii)   Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; and knowledge of the applicable law**

These factors also favor the Barenboim counsel. Attorney Liss-Riordan is probably the most experienced plaintiffs' attorney in the country in class and individual litigation challenging employers' tip policies. Having won three trials, an appeal, seven cases on summary judgment, and nearly twenty class action settlements in tips cases, she has grappled with (and prevailed

---

[10]   She is also in close touch with the attorneys who represented the successful plaintiffs' class in the California litigation. She and Attorney Terry Chapko, whose firm initiated that litigation, have been in communication regarding strategy in these Starbucks tips cases. (See Liss-Riordan Dec.)

against) nearly every argument imaginable raised in defense of these claims (particularly with regard to claims involving employees with managerial duties sharing in tip pools); she has handled the logistics of representing waitstaff classes at trial and in numerous settlement distributions; and she has spent the majority of her professional life for the last seven years studying the issues related to statutory tip law protections.  Attorney Kirschenbaum has likewise spent the last several years focusing on the application of N.Y. Labor Law § 196-d and using it to obtain significant recoveries on behalf of waitstaff classes and individuals throughout New York.

     While the <u>Harayda</u> counsel provide an exhaustive list of their general class action experience and their virtues in general (which the <u>Barenboim</u> plaintiffs do not contest), they do not and cannot point to significant experience related to wage and hour issues or *any* experience in tip-related litigation.  Instead, the <u>Harayda</u> counsel proclaim that the <u>Barenboim</u> counsel's significant experience handling these matters "is not determinative," (Wolf Popper Motion, at 9), ignoring Rule 23(g)'s attention to experience with "the types of claims asserted in the action," and "knowledge of the applicable law."  <u>See, e.g.,</u> <u>Kalish v. Karp & Kalamotousakis, LLP</u>, 246 F.R.D. 461, 463 (S.D.N.Y. 2007) (appointing class counsel on the basis of the attorney's experience litigating precisely the claims at issue in the case).  Wolf Popper's argument that it should be lead counsel simply because that firm has litigated more class actions is absurd; the <u>Barenboim</u> counsel have successfully litigated precisely these claims in precisely this manner countless times.

### (iv) The resources that counsel will commit to representing the class

The firms of Joseph & Herzfeld and Pyle Rome are fully staffed with attorneys that commit virtually all of their time and resources to labor and employment and/or wage and hour litigation. With respect to resources, the firms of Joseph & Herzfeld and Pyle Rome affirm that they have the resources to prosecute this case effectively and indeed this ability has not been challenged by Wolf Popper.

In addition, the Barenboim counsel are fully committed to keeping this litigation as efficient as possible.[11] While the Harayda counsel contend that efficiency will not be promoted by appointing the Barenboim counsel lead counsel because Attorney Liss-Riordan is located in Boston[12], she is in fact in a particularly good position to keep this litigation efficient, because she is handling the parallel case in Massachusetts.

---

[11] Given that the case involves an essentially legal issue, they have already proposed to Starbucks that the parties consider litigating this case on a stipulated record, relying for instance on the factual record already developed in the California litigation or on the findings of fact already entered by the National Labor Relations Board in the case of Starbucks Corporation and Industrial Workers of the World IU/660, Case No. 2-RC-22852 (NLRB, Region 2, June 2004). At the scheduling conference held on July 11, 2008, Judge Swain spoke approvingly of this proposal and urged the parties to give it serious consideration in their discussions of how this litigation will proceed.

[12] Attorney Liss-Riordan is admitted to practice in New York as well as Massachusetts, and the expense of her traveling to New York for this case will not likely be significant. Especially given that Starbucks' lead counsel is not located in New York, the travel needed for her to attend court hearings, depositions, etc., should not be a basis to deny lead counsel status for the

The <u>Harayda</u> counsel further claim that the <u>Barenboim</u> counsel would not be as efficient as Wolf Popper in prosecuting this case, since six attorneys from the <u>Barenboim</u> case have signed up for ECF notices, as opposed to three from Wolf Popper. The <u>Barenboim</u> counsel pride themselves on litigating efficiently and, being from modest-sized plaintiffs' law firms, will certainly not overstaff this case. The primary attorneys expected to work on the case include Attorneys Liss-Riordan and Kirschenbaum, with assistance as needed from Attorney Palmer from Joseph & Herzfeld and Attorney Schwab from Pyle Rome. To the extent that efficient litigation cannot be achieved, the <u>Barenboim</u> counsel are fully prepared and able to expand the staffing on the case and devote the resources necessary to its prosecution.

### B.     **The Barenboim Counsel Have Been Cooperative**

Given Wolf Popper's apparent admission that the <u>Barenboim</u> counsel have superior experience and knowledge with respect to the subject matter of this case (<u>see</u> motion, at 9), and do not challenge the <u>Barenboim</u> counsel's work on the case (other than to point out that they used the word "resident" rather than "citizen" in their initial complaint) or ability to devote the resources necessary to its prosecution, Wolf Popper seems to hang its entire hat on its allegations that the <u>Barenboim</u> counsel have not been cooperative with them.

As noted above, Wolf Popper has set forth an incomplete picture of the discussions that preceded the filing of its motion. When Wolf Popper proposed that the firms work cooperatively on the case, the <u>Barenboim</u> counsel inquired what the proposal would entail. The <u>Barenboim</u>

---

<u>Barenboim</u> counsel.

counsel did not see the need for three separate firms to represent the putative class in this case (and were concerned about duplication of efforts). Nevertheless, in the interest of avoiding this very type of dispute, the Barenboim counsel proposed that the firms work collaboratively. Despite the Barenboim counsel's several alternative suggestions, Wolf Popper hostilely rejected the Barenboim counsel's suggestions (with Attorney Levy shouting at Attorneys Kirschenbaum and Liss-Riordan) and refused to discuss and/or negotiate any arrangement other than its original proposal: that it have a full vote equal to the votes of both Pyle Rome and Joseph & Herzfeld combined and that it be guaranteed one-half of any attorneys' fees recovered, regardless of the amount of work it performed on the case. See Liss-Riordan and Kirschenbaum Decs.

While the Barenboim counsel would have much preferred to work out an amicable agreement regarding work-sharing (rather than engaging in this public dispute regarding interim class counsel appointment), this response by Wolf Popper caused them grave concern about the prospect of their having a successful and productive collaborative relationship.[13]  See Liss-

---

[13]    Wolf Popper contends that the Barenboim counsel initially rejected their initial overtures to work together on the case based upon a claim that the Barenboim counsel had won the "race to the courthouse". However, the Barenboim counsel's concerns were the same as those stated in this motion, i.e. that, Wolf Popper's class action experience notwithstanding, the interests of the plaintiff class would not be well served by a firm that does not have experience with tip litigation or wage and hour law. It is specifically this experience that prompted the Barenboim plaintiffs to retain their counsel for representation in this matter.

In addition, Wolf Popper has made some erroneous statements in support of its motion. For instance, it asserts that the Barenboim counsel did not share their draft of the proposed joint statement to Wolf Popper; on the contrary, Barenboim counsel did promptly forward it to Wolf Popper as well as Starbucks counsel after drafting it, so that all counsel could contribute any proposed edits to the statement. There was no reason for Wolf Popper to draft its own statement from scratch, other than its clear attempt to provide a "competing" draft and create more work

Riordan and Kirschenbaum Decs.

This type of behavior should not be rewarded with the appointment of *interim* lead counsel status for Wolf Popper. Certainly the sequence of events leading up to the filing of this motion do not overcome and, to the contrary, support the Barenboim counsel's superior qualifications for representing the putative class in this case.

**4.     CONCLUSION**

Because of their demonstrated dedication and success in representing thousands of food-service employees in dozens of cases challenging employers' tip-related violations (and their significant contributions to the development of the law in this area), it is clear that Attorneys Liss-Riordan and Kirschenbaum and their firms would provide outstanding representation for the putative class of Starbucks baristas in this case. The Barenboim plaintiffs thus respectfully request that the Court deny Wolf Popper's motion to be appointed interim class counsel and grant the Barenboim counsel's cross-motion for appointment.

---

for all counsel in the preparation of the joint statement. See Liss-Riordan and Kirschenbaum Dec.

Respectfully submitted,


/s/ *Shannon Liss-Riordan*
Shannon Liss-Riordan*
D. Maimon Kirschenbaum (DK-2338)

PYLE, ROME, LICHTEN, EHRENBERG, &
LISS-RIORDAN, P.C.
18 Tremont Street
Suite 500
Boston, MA 02108
617-367-7200 Phone
617-367-4820 Fax
*Admitted Pro Hac Vice*


JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640 Phone
(212) 688-2548 Fax

*Attorneys for Barenboim Plaintiffs*