UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
IN RE STARBUCKS EMPLOYEE
GRATUITY LITGATION                                    MASTER FILE
                                                      INDEX NO: 08-cv-3318 (LTS)

This Document Relates To:
All actions                                           Class Action



---------------------------------------------------------x


# BARENBOIM PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF THE BARENBOIM COUNSEL'S MOTION TO APPOINT BARENBOIM COUNSEL AS INTERIM CLASS COUNSEL

The Barenboim Plaintiffs' respectfully submit this reply brief in further support of their August 13 (cross) motion to appoint them as interim class counsel under FRCP § 23(g).[1]

## ARGUMENT

**A.     The rule 23(g) factors favor the Barenboim Counsel**

Starbucks baristas are bringing a class action lawsuit against their employer for misappropriation of their tips. These baristas would be best represented by counsel that have successfully litigated tens of class actions on behalf of foodservice workers against their employers for tip misappropriation.

In setting forth the standard for the appointment of class counsel, Rule 23(g)(A)(1)(ii) requires a court to consider counsel's experience handling the "the types of claims asserted in the

---

[1] Because Barenboim counsel's opposition to the Harayda counsel's motion to appoint interim class counsel included a cross-motion, Barenboim counsel is entitled to submit a reply brief pursuant to Local Rule 6.1.

action." Rule 23(g)(1)(A)(iii) requires a court to consider "counsel's knowledge of the applicable law." These two factors weigh significantly in favor of the Barenboim counsel. Barenboim counsel has set forth their extensive experience litigating the types of claim in this action and their extensive knowledge of the applicable law. Wolf Popper has not and cannot set forth *any* experience litigating the types of claims made by the Starbucks baristas or any knowledge of the applicable law. Instead, Wolf Popper (a) reminds that the Court that it has litigated many class actions relating to many other areas of law, and (b) criticizes Barenboim counsel for their "self laudatory" remarks regarding their experience in this specific area of law. In doing so, Wolf Popper plainly ignores that counsel's relevant experience in this precise area of law lies at the core of two out of the four factors that are pertinent to the appointment of class counsel.

With regard to the first factor set forth in Rule 23(g)(1)(A)(i), "the work counsel has done in identifying or investigating potential claims in the action," Barenboim counsel again has the clear advantage. As set forth in the Barenboim counsel original brief, the Barenboim counsel interviewed prior to the lawsuit a number of current and former Starbucks baristas and shift supervisors to determine the strength of the claims in this lawsuit. In addition, the Barenboim counsel have reviewed every published decision, New York Department of Labor opinion letter, and legislative history document relating to New York Labor Law § 196-d. As Wolf Popper cannot establish any significant activity in this regard, it diverts the Court's attention to what it alleges is a conflict of interest.[2]

---

[2] Wolf Popper contends that Attorney Liss-Riordan's representation of a putative class in the parallel Massachusetts case raises a conflict for her also representing the putative New York class in this case.

Barenboim counsel clearly satisfies the fourth factor of Rule 23(g)(1)(A)(iv), "the resources that counsel will commit to representing the class." Wolf Popper does not deny that Barenboim counsel have sufficient resources to litigate this case. Instead, Wolf Popper makes the backwards argument that the Barenboim counsel has "too many" resources, because they have "six attorneys billing this case." This argument cannot be remotely tied to Rule 23(g)(1)(A)(iv), which pertains to the sufficiency of resources. In any event, Wolf Popper has no support for its allegation that Barenboim counsel has six attorneys billing the case other than the fact that six attorneys have set themselves up to receive electronic notice. If Wolf Popper chooses not to have *all* attorneys working on *any* part of the case signed up for ECF notification, that is their prerogative, but it is completely irrelevant to the efficiency of their staffing of this case. Attorneys Kirschenbaum and Liss-Riordan are the primary attorneys on this case. To the extent that other attorneys are working on this case, their work is not being duplicated. Nevertheless, Barenboim counsel finds that is would be in the interests of the class for every attorney involved to be abreast of any and all potential deadlines by receiving ECF notice.

---

Under Wolf Popper's theory the same counsel could never represent subclasses in any class action litigation. However, courts routinely certify as class counsel attorneys that represent separate subclasses against the same defendants, without concern for the abstract possibility that the attorneys will compromise the interests of one subclass. *See, e.g., Lindsay v. Gov't Emples. Ins. Co.,* 2008 U.S. Dist. LEXIS 51944 (D.D.C. July 3, 2008) (appointing the same class counsel for a New York class as counsel for an FLSA nationwide class against the same defendant); *Rosenburg v. IBM*, 2007 U.S. Dist. LEXIS 53138 (N.D. Cal. July 12, 2007) (certifying one class counsel for 3 separate classes); *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.,* 2003 U.S. Dist. LEXIS 25717, at *31 (D. Or. May 19, 2003)(7 separate state law classes). The putative classes in both cases share the same goals, and by representing putative classes in both states counsel are well positioned to coordinate strategy to the advantage of both classes. Moreover, Rule 23 contains strict guidelines pertaining to court supervision of class actions, and it would be impossible for any counsel to compromise any class' position without court approval. Finally, Barenboim counsel includes Mr. Kirschenbaum and Joseph & Herzfeld LLP, who do not represent any other class against Starbucks.

**B.     The Barenboim counsel has been cooperative**

As Rule 23(g)(1)(A)'s four factors, which a court "must consider," clearly favor the appointment of Barenboim counsel as class counsel, Wolf Popper shifts the focus to Barenboim counsel's being allegedly uncooperative.  Wolf Popper's version of the events is simply false.  During Barenboim counsel's various attempts to reach a resolution with Wolf Popper, Barenboim counsel indeed asked Wolf Popper, for obvious reasons, "what they had to offer."  However, despite their concern regarding Wolf Popper's glaring lack of experience with this subject matter, Barenboim counsel consistently made clear to Wolf Popper that is was interested in reaching an agreement under which the firms could work together.

The first conversation between the firms on July 3, 2008 ended abruptly with Mr. Levy of Wolf Popper refusing to discuss any possible deal other than his original proposal. *Kirschenbaum Decl.* ¶¶ 2-3. Attorney Kirschenbaum, fearing that the conversation had not ended well, subsequently reached out to Ms. Raphael of Wolf Popper to discuss further possibilities and another specific proposal.  Ms. Raphael assured Mr. Kirschenbaum that she would discuss the matter with her partners and get back to him.  In an email dated July 9, 2008, Ms. Raphael further assured Mr. Kirschenbaum that she would discuss the matter with her partners. *Id.* ¶¶ 4-6 and Exhibit A.   Two days later, approximately five minutes before the conference on July 11, 2008, Mr. Levy approached Mr. Kirschenbaum and asked if they 'had a deal," *i.e.,* whether Barenboim counsel had agreed to Wolf Popper's original proposal. *Id.* ¶ 7.  Barenboim counsel was stunned that despite Ms. Raphael's representations that she would discuss with Mr. Levy the subsequent negotiations, Mr. Levy completely ignored the subsequent proposals and insisted on his original.  Mr. Kirschenbaum informed Mr. Levy that as expressed many times, Barenboim

4

counsel was not comfortable with that proposal, but remained open to future discussion after the conference. Mr. Levy stated that he could not remain after the conference. Mr. Kirschenbaum suggested that they discuss the matter the following week. *Id.* ¶¶ 8-10.

The first communication by Mr. Levy to Barenboim counsel following the July 11 conference was an email sent roughly one week later (July 17, 2008). The email disingenuously stated that Mr. Levy thought that the Barenboim counsel had already agreed to his proposal and complained that the Barenboim counsel had not abided to the terms of the "agreement." *Id.* ¶¶ 11-12 and Exhibit B. Mr. Kirschenbaum immediately responded by email protesting Mr. Levy's attempt to "build a record" by setting forth this self-serving version of the events. *Id.* and Exhibit B. Nevertheless, Mr. Kirschenbaum made abundantly clear to Mr. Levy that the Barenboim counsel was still open to further discussions of working together. However, as with the other proposals by Barenboim counsel, Wolf Popper simply ignored this invitation and filed a motion for interim appointment of class counsel on July 23, 2008.

Throughout the time period between the firms' first conversation until Wolf Popper's motion for interim appointment of class counsel, Barenboim counsel remained open to working together. Nevertheless, Wolf Popper refused to accept any arrangement other than their original proposal, resulting in the dispute currently before this Court.

**CONCLUSION**

The Barenboim counsel are clearly best suited to represent the Starbucks baristas based on the four factors set forth in Rule 23(g). Further, Wolf Popper has demonstrated that it cannot work together with the Barenboim counsel, despite the Barenboim counsel's attempts to resolve this dispute. Therefore, Barenboim counsel respectfully requests that Court grant its requests to be appointed interim class counsel.

Respectfully submitted,

/s/ *D. Maimon Kirschenbaum*
D. Maimon Kirschenbaum (DK-2338)
Shannon Liss-Riordan*

PYLE, ROME, LICHTEN, EHRENBERG, &
LISS-RIORDAN, P.C.
18 Tremont Street
Suite 500
Boston, MA 02108
617-367-7200 Phone
617-367-4820 Fax
*Admitted Pro Hac Vice*

JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640 Phone
(212) 688-2548 Fax

*Attorneys for Barenboim Plaintiffs*